# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | } | |
| | } | |
| **v.** | } | |
| | } | **Case No. 1:15-CR-88-CG-B** |
| **JOHN PATRICK COUCH, M.D. and XIULU RUAN, M.D.,** | } | |
| | } | |
| | } | |
| **Defendants.** | } | |

## DEFENDANT JOHN PATRICK COUCH, M.D.'S MOTION TO EXCLUDE THE GOVERNMENT'S PROPOSED EXPERT WITNESSES OR, IN THE ALTERNATIVE, TO COMPEL SUPPLEMENTAL EXPERT DISCLOSURES

Pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure, Defendant John Patrick Couch, M.D. ("Dr. Couch") requests that the Court enter an order that precludes the Government from calling various expert witnesses at trial. The Government's expert disclosures are inadequate under Rule 16 and provide an insufficient basis to determine, under Fed. R. Evid. 702, whether the proposed testimony is relevant and reliable under Daubert. In the alternative, Dr. Couch requests the Court to enter an order that compels the government to supplement its expert disclosures to fully comply with Rule 16(a)(1)(G).[1]

## BACKGROUND

The Government alleges that Dr. Couch violated the Controlled Substances Act, and the Second Superseding Indictment's Counts Thirteen and Fourteen include allegations that Dr. Couch's actions purportedly caused the death of some of his patients. As of December 2, 2016, however, the Government has advised Dr. Couch's counsel that it intends to pursue only one of these so-called "death enhancements" alleged in the Second Superseding Indictment – in

[1] As required by Local Rule 16, counsel for Dr. Couch has conferred with counsel for the Government in an effort to resolve this dispute. The parties were unable to resolve this issue.

particular, the one contained in Count Fourteen for patient "P.C." [Doc. #269 at 27]. For purposes of this motion, that patient is referred to as "**Patient B**."

As background, on June 15, 2016, the Government emailed Dr. Couch's counsel a nine-page document entitled Notice of Expert Opinion Testimony. Ex. 1.[2] This document purports to identify fourteen expert witnesses who may present expert opinion testimony on behalf of the Government at trial.

The notice has been supplemented by the Government. Ex. 2. Even supplemented, many of the disclosures are woefully inadequate. Many of the disclosures just state a conclusion with no supporting basis, while others give no indication about what methodology, if any, was used in reaching the conclusion. For example:

Dr. Amy Hawes

Dr. Hawes appears to be a "cause of death" medical expert who reviewed the autopsy and toxicology reports for deceased **Patient A**.[3] Ex. 1, p. 5. The toxicology report revealed oxycodone, morphine, and alprazolam in **Patient A**'s system at the time of her death. While Dr. Couch prescribed the oxycodone and morphine, Dr. Hawes will testify that "[a]nother doctor prescribed the alprazolam." Dr. Hawes will apparently testify that each of those three drugs could have independently caused the death, including the drug that Dr. Couch did not even prescribe. The disclosure provides no basis or reasons for her opinions, is silent as to the

[2] Copies of the Government's expert disclosures are being filed with patient names redacted. Additionally, the passages referenced in this motion are highlighted.

[3] It is unclear whether the Government intends to offer this testimony, as the Government is not seeking a "death enhancement" related to **Patient A**. To the extent that the Government intends to present this evidence, though, Dr. Couch requests the relief as specified in this motion.

methodology employed, and does not say whether Dr. Hawes relied on any treatises or peer-reviewed articles in formulating her opinions.

Dr. Curt. E. Harper

Dr. Harper will apparently opine that the oxymorphone level in **Patient B** "is a potential lethal level, and that the other drugs in the blood are within therapeutic range or sub-therapeutic." Ex. 1, pp. 5-7. The disclosure provides no basis or reasons for his opinions, is silent as to the methodology employed, and does not say whether Dr. Harper relied on any treatises or peer-reviewed articles in formulating his opinions.

Dr. Staci Turner, Dr. Eugene Hart, and Dr. John Krolikowski

The **entire disclosure** for these three experts consists of one sentence: they purportedly "will testify about the cause of death for certain of the defendants' 'pain management patients' to include, but not limited to, [**Patient C**], [**Patient D**], [**Patient B**], and [**Patient E**]." Ex. 1, p. 7. As for **Patient B**, not only does this portion of the disclosure not tell us anything about the methodology or basis for such opinions, it does not even tell us what the opinions are. Further, the disclosure does not say whether these proposed experts relied on any treatises or peer-reviewed articles in formulating their opinions.

Dr. Steven Dunton

Dr. Dunton will "testify about the cause of death" of **Patient B**. Ex. 1, p. 7. According to the Government, "it is his opinion that [**Patient B**] is a clear-cut oxymorphone over-dose." Id. Dr. Dunton will also opine that, as to **Patient B**, "'but for' applies" and "[n]o heart disease, no alcohol, heavy lungs – common in drug intoxication." Ex. 2, p.3. The disclosure provides no basis or reasons for his opinions, is silent as to the methodology employed, and does not say whether Dr. Dunton relied on any treatises or peer-reviewed articles in formulating his opinions.

Dr. Trisha Aultman

Dr. Aultman apparently intends to testify that, "[a]fter [**Patient B**] came down with aspirational pneumonia, Dr. Couch should have stopped giving him the same Controlled Substances." Ex. 2, p. 2. The disclosure provides no basis or reasons for her opinion, is silent as to the methodology employed, and does not say whether Dr. Aultman relied on any treatises or peer-reviewed articles in forming her opinion.

Dr. Rahul Vohra

Dr. Vohra apparently intends to testify that **Patient B** "needed detox and non-opiods." Ex. 2, p. 3. The disclosure provides no basis or reasons for his opinion, it is silent as to the methodology employed, and does not say whether Dr. Vohra relied on any treatises or peer-reviewed articles in forming his opinion.

* * *

These disclosures do not satisfy the Government's obligations under Rule 16(a)(1)(G) to provide a disclosure that "describe[s] the witnesses's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). This is no small matter. Rather, it goes to the very ability of an accused to defend himself. As a result, the above experts should be prohibited from testifying or, in the alternative, the Government should be required to provide adequate disclosures, giving both this Court and Dr. Couch the ability to know what the expert will say.

## ARGUMENT

### I. The Government's experts should be excluded because the disclosures do not comply with Rule 16.

Expert disclosure obligations are governed by Rule 16(a)(1)(G), which provides in pertinent part that "the government must give the defendant a written summary of any testimony

that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). This summary "must describe the witnesses's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). In addition, the summary "should cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment.

A. Complex medical and scientific judgments are at issue in the charge against Dr. Couch, and the disclosures should have sufficient detail to allow cross-examination and protect his right to a fair trial.

These expert disclosure requirements are especially important in this case where the Government purports to offer complicated medical opinion testimony. Indeed, providing the defendants with a detailed disclosure when technical or scientific matters are at issue is essential to the defendant's ability to adequately prepare for trial. See United States v. Noe, 821 F.2d 604, 606 (11th Cir. 1987); see also United States v. Davis, 514 F.3d 596, 613 (6th Cir. 2008) (concluding that prosecutors' insufficient disclosure was "clearly" a violation of Rule 16(a)(1)(G) that would have prevented defendant from having an expert "analyze the steps that led the government's chemists to their conclusions"), cert. denied, 555 U.S. 835 (2008).

As the issues become more complex, the need for more detailed disclosures becomes heightened. See United States v. Lamonda, No. 05-cr-131, 2006 WL 843823, at *1 (M.D. Fla. Mar. 29, 2006) (comparing the less detailed disclosures "in a drug trafficking case in which law enforcement officers would offer expert opinions about the methods used by drug traffickers" with "a check-kiting case," where the government "described [the expert's] methodology and the bases he used for analyzing check-kiting, as well as the checks and summary charts the government intended to use in connection with the agent's testimony.").

Thus, in complicated cases, "the 'bases and reasons' supporting [an expert]'s opinion must be more than a statement of his opinion and a recitation of the documents he reviewed." Id. at *2. They "must explain . . . how [the expert] arrived at his opinion, including the methodology he used to reach his conclusions." Id. (citation omitted); see also United States v. Cordoba, No. 12-20157, 2012 WL 3614319, at *1, 3 (S.D. Fla. Aug. 21, 2012) (finding that government's disclosure as to an "expert regarding the functioning, dimensions, and capacity of the fuel system and tanks, engines, and functioning of Lear Jets" did "not satisfy Rule 16(a)(1)(G)'s requirements as the Eleventh Circuit has construed them" when notice explained only the expert's work history and subjects about which he would testify).

For these reasons, the Eleventh Circuit has held that a scientific expert's opinion may be excluded if its basis is nothing more than the expert's experience and training. See United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (affirming an exclusion of expert testimony on the grounds that the expert offered no explanation for the basis of his opinion other than his extensive experience). Further, the Eleventh Circuit has held that, in a complicated technical matter, notice cannot simply state the subject about which an expert would testify and his ultimate opinion. United States v. Holland, 223 Fed. App'x 891, 894 (11th Cir. 2007).

This rule is well-reasoned. Obviously, most attorneys do not have training or expertise in scientific fields, so detailed disclosures are necessary to enable the attorneys to adequately prepare for cross-examination. Indeed, the drafters of Rule 16 explicitly stated that the disclosure requirements are intended "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed.

R. Crim. P. 16 advisory committee's note to 1993 amendment (also stating that the amendment to Rule 16 "expand[ed] federal criminal discovery").

Analysis of a Rule 16 violation focuses on "protect[ing] the defendant's right to a fair trial." See United States v. Camargo-Vergara, 57 F.3d 993, 999 (11th Cir. 1994). Indeed, the degree to which a defendant suffers as a result of the government's discovery violation is determined "by considering how the violation affect[s] the defendant's ability to present a defense." United States v. Noe, 821 F.2d 604, 607 (11th Cir. 1987). As a result, because the violation of Rule 16 is measured by its impact on the defendant, whether the violation was intentional is irrelevant; even inadvertent violations that prejudice the defendant must be remedied. Camargo-Vergara, 57 F.3d at 999 ("Inadvertence does not render a discovery violation harmless; rather, the purpose of Rule 16 is to protect a defendant's right to a fair trial rather than to punish the government's non-compliance." (citations omitted)).

B. Consistent with *DSD Shipping*, the Government's expert disclosures are inadequate.

Rule 16(d)(2) of the Federal Rules of Criminal Procedure provides the Court with the following remedies where, as here, the Government's expert disclosures are deficient: "(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2).

The proper remedy here is exclusion.

The disclosures contained in Exhibit 1, even as supplemented in Exhibit 2, demonstrate that the Government has offered, at best, conclusory statements of its proposed expert witnesses. They have not disclosed:

- the basis for any of the opinions referenced above;
- what methodologies the experts employed in formulating the opinions,
- what standards in the industry the experts are relying upon; or
- whether the experts are relying on any peer reviewed publications or treatises.

This information is required. These disclosures not only violate the plain language of Rule 16, but they also violate the spirit of Rule 16 in that the defense has not been given a fair opportunity to prepare to cross-examine these witnesses. In short, the disclosures essentially tell us nothing.

This court's decision in United States v. DSD Shipping, A.S., No. 15-00102-CG-B, 2015 WL 5737157 (S.D. Ala. Sept. 30, 2015) (Granade, J.), is instructive on this issue. In DSD, this Court ruled that the Government's expert witness disclosures were deficient in multiple areas. For example, the Court appeared to agree with the defendants' argument that "it is intuitive that complex expert testimony requires a heightened level of detail to at least summarize the methodology use and conclusion(s) drawn." Id. at *2. But in DSD, some disclosures were deficient because "[t]he United States . . . fail[ed] to provide a summary of the methodology employed," which "is necessary to test the merits of [the expert's] analysis." Id.

Here, the expert testimony will also be complex, but the Government has failed to disclose the methodologies its experts utilized in forming their opinions. Nor has the Government provided Dr. Couch with the bases and reasons for the opinions, the standards upon which they rely, or peer-reviewed publications that may support their opinions. Given that the Government has violated Rule 16 with these deficient disclosures, these experts should be excluded. Alternatively, the Government should be ordered to provide full, fair, and complete disclosures in accordance with Rule 16.

## II. The Government's experts also should be excluded because the disclosures, as written, give no indication that the testimony is relevant or reliable.

Putting aside the inadequate disclosures, the experts must also be excluded because, as it stands, their testimony is inadmissible under Fed. R. Evid. 702. Importantly, Rule 16(a)(1)(G) references Rule 702, 703, and 705, which is further evidence that the disclosures must provide the bases for the opinions. And, under Rule 702 and Daubert, the expert opinions must be both relevant and reliable. Rule 702 governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 requires district courts to perform a "gatekeeping" role concerning the admissibility of expert testimony and assigns "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597, 113 S.Ct. 2786 (1993). Accord Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). The court's gatekeeping role is especially significant because "the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir.2004); see also Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005) (purpose of Daubert analysis is to "ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony'"). "The party offering the expert

has the burden of satisfying each of these three elements by a preponderance of the evidence." Id. at 1292 (citing Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999)).

The court's gatekeeper duty is especially important with regard to an assessment of the reliability of expert testimony so that "speculative and unreliable opinions do not reach the jury." McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1237 (11th Cir. 2005). An expert opinion based upon speculation and conjecture fails the threshold of reliability required under Daubert and Rule 702. See Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1194 (11th Cir. 2010) ("Courts are cautioned not to admit speculation, conjecture, or inference that cannot be supported by sound scientific principles. 'The courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science; it does not lead it.'") (quoting Rider v. Sandoz Pharms. Corp., 295 F.3d 1194, 1202 (11th Cir. 2002)). And, although experts may extrapolate opinions from existing data, a court should not admit expert opinion "which is connected to existing data only by the ipse dixit of the expert." General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

The reliability of an opinion concerns "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93. The court may consider "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community." McDowell v. Brown, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing Daubert, 509 U.S. at 593-94). These factors are not exclusive. The court may take other relevant factors into account.

The court's gatekeeping duties cannot rest on the qualifications of the expert alone. It is inappropriate for the court to "simply rubber stamp the opinions of expert witnesses once they are determined to be an expert." Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1336 (11th Cir. 2010); see also Allison, 184 F.3d at 1316-17 (11th Cir. 1999) ("Under the regime of Daubert . . . a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist."); Rider, 295 F. 3d at 1197 ("In Kumho Tire, the Supreme Court made it clear that testimony based solely on the experience of an expert would not be admissible.").

The disclosures, as written, make it impossible for Dr. Couch to analyze whether these opinions have a proper basis, whether they are relevant, whether they are reliable, and whether they satisfy Daubert. Accordingly, the opinions should be excluded or, at a minimum, the Government should be ordered to supplement the disclosures in accordance with Rule 16.

* * *

Dr. Couch respectfully requests that the Court exclude the experts as described above. In the alternative, Dr. Couch requests the Court to order the Government to provide supplemental disclosures in compliance with Rule 16.

Respectfully Submitted,

Date: December 2, 2016

*/s/ Jackson R. Sharman III*
One of the Attorneys for the Defendant,
John Patrick Couch, M.D.

OF COUNSEL:
Jackson R. Sharman III
*jsharman@lightfootlaw.com*
Jeffrey P. Doss
*jdoss@lightfootlaw.com*
Robert J. Sewell
*jsewell@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203
(205) 581-0700
(205) 581-0799 (Facsimile)

Arthur T. Powell III
*atp@law-linc.com*
P.O. Box 40456
Mobile, Alabama 36640
(251) 433-8310

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 2nd day of December, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jackson R. Sharman III*
OF COUNSEL