IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA )
)
)
v. ) CRIMINAL NO. 15-00088-CG-B
)
JOHN PATRICK COUCH, M.D., )
and XIULU RUAN, M.D. )

## ORDER AND MEMORANDUM OPINION

This matter is before the Court on dual motions to dismiss the second superseding indictment, in part,[1] filed by Defendant Xiulu Ruan, M.D. ("Dr. Ruan") (Doc. 374) and Defendant John Patrick Couch, M.D. ("Dr. Couch) (Doc. 378).[2] The Government filed an objection thereto. (Doc. 392). Additionally, the Court has before it a motion to dismiss certain counts within the Indictment or, alternatively, motion for bill of particulars filed by Dr. Couch (Doc. 379), the Government's objection thereto (Doc. 387), and Dr. Couch's reply (Doc. 407).[3] For the reasons set forth below, Defendants' motions are **DENIED**.

### I. Standard of Review

**a. Motion to Dismiss**

A court may dismiss a criminal prosecution on grounds of "a defect in the indictment." FED. R. CRIM. P. 12(b)(3)(B). However, an indictment is sufficient as

---

[1] The Second Superseding Indictment (Doc. 269) is referred to as "the Indictment."
[2] Dr. Ruan and Dr. Couch are collectively referred to as "Defendants."
[3] Dr. Ruan did not join in the motion filed by Dr. Couch to dismiss certain counts within the indictment or, alternatively, for a bill of particulars.

long as it sets forth "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). The Eleventh Circuit instructs that "[a]n indictment is sufficient if it (1) presents the essential elements of the charged offense; (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Steele*, 147 F.3d 1316, 1320 (11th Cir. 1998) (en banc) (citation omitted). The general rule is that the sufficiency of the indictment should be determined from the face of the indictment, and an indictment is sufficient if it charges the language of the statute, as long as it sets forth the elements of the crime. *See United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). In "determining whether an indictment is sufficient, we read it as a whole and give it a 'common sense construction.' In other words, the indictment's 'validity is to be determined by practical, not technical considerations." *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009). For purposes of this analysis, the allegations of the indictment must be taken as true. *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 33 n.2 (1952).

**b. Bill of Particulars**

Pursuant to Federal Rule of Criminal Procedure 7(f), "[t]he court may direct the government to file a bill of particulars." FED. R. CRIM. P. 7(f). The purpose of a bill of particulars is "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at

2

trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (quoting *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985)). A bill of particulars supplements an indictment by providing information necessary for a defendant to prepare for trial. *Id*. at 1441–42. "Generalized discovery is not the proper functions of a bill of particulars." *United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985). A bill of particulars is not a tool by which a defendant can "compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980). "Nor is the defendant entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection." *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986).

## II. Motion to Dismiss the Indictment, in Part

The Indictment charges Defendants with violation of Title 21, United States Code, § 841(a)(1) of the Controlled Substances Act ("CSA"). Section 841(a)(1) of the CSA provides, "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally … to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance …." The Indictment also charges Defendants with violation of Title 21, United States Code, § 846 of the CSA. Section 846 of the CSA makes criminal a conspiracy to commit an offense under § 841(a)(1). Although certain licensed medical

3

professionals are exempted from the CSA and may prescribe controlled substances, the prescription "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice" to be exempted. 21 C.F.R. § 1306.04(a).

Defendants move to dismiss the Indictment, in part, due to the alleged vagueness of § 841(a)(1) and § 846. They contend that the "statutory framework, controlling regulatory authority, and case law" fail to provide a standard or put a physician on notice of what conduct is prohibited thereunder in violation of the Fifth and Fourteenth Amendment of the United States Constitution. (Doc. 374; Doc. 378).[4] The Government responds that the body of caselaw within the Eleventh Circuit and other circuits provided Defendants with a "'blueprint' of prescribing practices" that afforded sufficient notice of the CSA's application. (Doc. 392, p. 2).

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). To survive a vagueness challenge, a statute must give "relatively clear guidelines as to prohibited conduct." *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 525 (1994). In this regard, the statute must provide

---

[4] The separate motions to dismiss the Indictment filed by Defendants are significantly the same, with Dr. Couch including an additional page of factually specific analysis. *See* (Doc. 378, p. 20). Given the motions are essentially identical, the Court cites only Dr. Couch's motion from this point forward for efficiency purposes.

4

"objective criteria" that will "minimize the possibility of arbitrary enforcement and assist in defining the sphere of prohibited conduct under the statute." *Id.* at 526. "The underlying principle [in a vagueness analysis] is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617 (1954). Furthermore, because Defendants' void-for-vagueness challenge does not raise a First Amendment issue, it must be evaluated only as applied, in light of the facts of the case at hand. *United States v. Hasner*, 340 F.3d 1261, 1269 (11th Cir. 2003).

Defendants do not contest the CSA's applicability to physicians. This is in good measure. *See United States v. Moore*, 423 U.S. 122, 124 (1975) (concluding that a physician could be prosecuted under the CSA).[5] Instead, Defendants take issue with the phrases "legitimate medical purpose" and "acting in the usual course of [their] professional practice." Defendants contend that the CSA or any other guiding authority does not sufficiently shed light on the "nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider" and only creates more questions than offers answers. (Doc. 19, p. 24). Therefore, a physician has no way of knowing if he or she may run afoul the CSA when the method of proof one may face is based on the "say-so of [the Government's] expert." *Id.*

Defendants' argument is unavailing. The Fifth Circuit addressed and

---

[5] In fact, physicians have been subjected to criminal prosecution for their professional actions as far back as 1906 under one form or another of the CSA's predecessors. Sharon B. Roberts, *All "Pushers" are not created equal! The inequities of sanctions for physicians who inappropriately "prescribe" controlled substances*, 23 NOVA L. REV. 881, 883 (1999).

5

rejected some time ago the argument that the CSA is void-for-vagueness as it applies to physicians. *See United States v. Collier*, 478 F.2d 268 (5th Cir. 1973).[6] Reaffirming *Collier's* reasoning five years later, Judge Vance wrote, in relevant part:

> "It is apparent that a licensed practitioner is not immune from the act solely due to his status, *White v. United States*, 399 F.2d 813 (8th Cir. 1968), but rather, because he is expected to prescribe or dispense drugs within the bounds of his professional practice of medicine. A physician is restricted to dispensing or prescribing drugs in the bona fide treatment of a patient's disease, including a dispensing of a moderate amount of drugs to a known addict in a good-faith attempt to treat the addiction or to relieve conditions or suffering incident to addiction. (Citations omitted.) However, under the guise of treatment a physician cannot sell drugs to a dealer nor distribute drugs intended to cater to cravings of an addict. (Citations omitted.) Congress did not intend for doctors to become drug "pushers." (Citations omitted.) In making a medical judgment concerning the right treatment for an individual patient, physicians require a certain latitude of available options. *Doe v. Bolton*, 410 U.S. 179, 191 (1973). Hence, "[w]hat constitutes bona fide medical practice must be determined upon consideration of evidence and attending circumstances." *Linder v. United States*, [268 U.S. 5, 18 (1925)]."

*United States v. Rosen*, 582 F.2d 1032, 1035 (5th Cir. 1978) (quoting *Collier*, 478 F.2d at 271–72) (omissions in original) (alteration added).

Although *Rosen* did not deal with a vagueness contention, it did address a physician's criminal liability under the CSA based on prescriptions not issued for medical purposes and outside of the usual course of professional practice. *Id.* at 1037–38. In doing so, the court laid down a framework for physicians to consider in their practice. "Recurring concomitance of condemned behavior" subjecting a

---

[6] All decisions of the Fifth Circuit issued on or before September 31, 1981 are binding within the Eleventh Circuit. *Bonnard v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

6

physician to prosecution under the CSA includes, but is not limited to:

> [a]n inordinately large quantity of controlled substances was proscribed[;] (2) [l]arge numbers of prescriptions were issued[;] (3) [n]o physical examination was given[;] (4) [t]he physician warned the patient to fill prescriptions at different drug stores[;] (5) [t]he physician issued prescriptions to a patient known to be delivering the drugs to others[;] (6) [t]he physician prescribed controlled drugs at intervals inconsistent with legitimate medical treatment[;] (7) [t]he physician involved used street slang rather than medical terminology for the drugs[;] (8) [t]here was no logical relationship between the drugs prescribed and treatment of the condition allegedly existing[; and] (9) [t]he physician wrote more than one prescription on occasions in order to spread them out.

*Id.* at 1036 (citations omitted). *Collier* and *Rosen* laid the foundation for the framework that provides physicians with the necessary notice to what acts violate the CSA.

Defendants, however, attempt to distance themselves from *Collier* and its progeny as being "decided well before the legal framework for the CSA's application to physicians evolved into its current state of enigmatic morass." (Doc. 378, p. 22). But as the Government offers, those cases that struggled with the inner workings of the CSA as it relates to physicians have been in the sense of "the applicable mens rea and the standard of care that should be incorporated in jury instructions." (Doc. 392, p. 6). No caselaw is before the Court suggesting that courts have grappled with what qualifies as "not for a legitimate medical purpose" or "outside the usual course of practice." Instead, cases have repeatedly upheld convictions for physicians who abused their exemption under the CSA. *See, e.g.*, *United States v. Bourlier*, 518 F. App'x 848, 851 (11th Cir. 2013) (affirming a physician's conviction under the CSA where he wrote an inordinately large quantity of prescriptions for the same drugs

7

during a period of time to patients he knew or should have known abused the drugs); *United States v. Joseph*, 709 F.3d 1082, 1104 (11th Cir. 2013) (upholding a physician's conviction under the CSA where he prescribed an inordinate amount of "certain controlled substances," with little or no physical examinations, when he knew or should have known of the misuse of such drugs, prescribed in combinations that were medically unnecessary); *United States v. Ignasiak*, 667 F.3d 1217, 1229 (11th Cir. 2012) (finding, among other evidence, a physician's 43,000 prescriptions for controlled substances over a five year period sufficient to uphold a conviction under the CSA); *United States v. Merrill*, 513 F.3d 1293, 1306 (11th Cir. 2008) (same based on 33,000 prescriptions written during a three year period).

Further, courts have repeatedly rejected physicians' void-for-vagueness arguments as they relate to the CSA. *See, e.g.*, *United States v. McKay*, 715 F.3d 807, 824 (10th Cir. 2013) (finding the CSA is not unconstitutionally vague as applied to a pain management doctor); *United States v. Deboer*, 966 F.2d 1066, 1068–69 (6th Cir. 1992) (denying a void-for-vagueness challenge to the CSA because a pharmacist's responsibilities giving rise to unlawful conduct was "clearly defined"); *United States v. Roya*, 574 F.2d 386, 390–91 (7th Cir. 1978) (rejecting an argument suggesting the CSA was unconstitutionally vague as applied to a defendant-physician); *United States v. Gerlay*, 2009 WL 4897748, at *7 (D. Alaska Dec. 11, 2009) (finding the CSA "is not void-for-vagueness neither facially nor as applied" to a pain doctor); *United States v. Birbragher*, 576 F. Supp. 2d 1000, 1012–13 (N.D. Iowa 2008) (finding the CSA provides adequate notice of the proscribed

8

conduct for physicians), *affirmed*, 603 F.3d 530 (8th Cir. 2010); *United States v. Prejean*, 429 F. Supp. 2d 782, 805 (E.D. La. 2006) (holding the phrases "legitimate medical purpose" and "professional practice" are not unconstitutionally vague). This body of caselaw, the others previously cited, and those present but uncited for efficiency purposes provide Defendants with the notice necessary to satisfy the Fifth and Fourteenth Amendment, and the CSA is not vague because it "need not delineate the precise circumstances constituting the bounds of permissible practice." *Collier*, 478 F.2d at 272.

Notwithstanding, Defendants contend that the gravamen of the indictment is not whether those things required were done but that they did not do those things required "well enough to satisfy the standards of Government agents and attorneys." (Doc. 378, p. 21). This "well enough" standard is satisfied only when "Government agents[,] attorneys," and their experts say it is. (Doc. 378, p. 20). But this creates a dilemma for physicians "prescribing pain medicine to patients who presented themselves to the clinic as patients in pain." *Id*. And given that no clear guidance exists in medical references for pain management doctors, the CSA is unconstitutionally vague as applied to them.

At least one other district court has rejected a similar argument. In *Gerlay*, a pain doctor argued the CSA's vagueness and inapplicability for pain doctors "because there is no consensus in the medical community on a standard of care for chronic pain patients." 2009 WL 4897748, at *5. The court disposed of this argument by concluding, "The area of pain management arguably has more fluid

9

definitions of permissible practice than other areas of medicine. This, however, is an issue for trial, and not properly decided as part of this motion." *Id*. The Court agrees with this conclusion.

Additionally, the Government has laid out facts it claims will be shown at trial. *See* (Doc. 392, pp. 10–16). This evidence consists of e-mail communications between Defendants regarding certain "red flag" drugs prescribed by Defendants. The Government contends that these facts show that Defendants knew or at least should have known that "they were engaging in illegal prescribing practices during the course of the subject conspiracy." *Id.* at 10. Whether the Government can prove its case is a matter for trial, not pre-trial dismissal. But for the purposes of this motion, the language of the CSA, in light of the caselaw outlined above, was clearly intended to encompass doctors who reasonably understood their conduct to be proscribed. *United States v. Lovern*, 590 F.3d 1095, 1103 (10th Cir. 2009). Thus, in light of the facts of this case, the CSA is not vague as applied to Defendants.

Defendants' argument that the CSA encourages arbitrary enforcement and leaves the "livelihood and liberty" of physicians up to "the whims of Government regulators" is equally unpersuasive. Section 841(a)(1) of the CSA strictly prohibits the production or distribution of controlled substances, except for the narrow medical professionals acting in the usual scope of his or her practice exception.

> The latter phrase has an objective meaning that prevents arbitrary prosecution and conviction: Neither the government nor the jury is free to impose its own subjective views about what is and is not appropriate; rather the government is obliged to prove, and the jury constrained to determine, what the medical profession would generally do in the circumstances.

10

*United States v. Quinones*, 536 F. Supp. 2d 267, 274 (S.D.N.Y. 2008). Thus, Defendants' Motion to Dismiss the Indictment, in part, is **DENIED** because the CSA is not unconstitutionally vague as applied to physicians.[7]

### III. Motion to Dismiss Certain Counts or, Alternatively, Bill of Particulars

#### a. Dismissal of Certain Counts

The issue is not a question of whether the Indictment contains the correct statutory citation or elements. Instead, Dr. Couch takes issue with the factual allegations therein. Count One charges Dr. Couch with conspiring to carry out racketeering activity in his different enterprises that affect interstate commerce. (Doc. 269, pp. 13–20). Dr. Couch contends that the indictment states he engaged in "'racketeering activity,' yet there is no language in the indictment giving [him] notice as to how these acts or omissions qualify as criminal offenses rather than the practice of pain management medicine." (Doc. 379, p. 8). As to Counts Two through Seven, Thirteen, and Fourteen, the Indictment charges Dr. Couch with either the illegal distribution and possession of controlled substances in violation of 21 U.S.C. § 841(a) (either personally or as a principal under 18 U.S.C. § 2(a)), conspiring to

---

[7] Defendants alternatively request a jury instruction from the Court that Defendants cannot be convicted based on mere negligence in prescribing controlled substances ("the civil standard of care"), that a single national standard for the prescription of controlled substances does not exist, and that a "good faith" exception for the prescription of controlled substances exists. (Doc. 378, p. 24). As Defendants concede on at least one of these points, the necessity of an instruction turns on what transpires during trial. The Court has no way of knowing what will transpire at trial; therefore, such a ruling cannot reasonably be determined at this point. The Court reserves ruling on these requests until a later point. Additionally, Defendants' argument that the racketeering count is due to be dismissed is without merit since the CSA is not unconstitutionally vague as applied to physicians.

illegally distribute and possess controlled substances in violation of 21 U.S.C. § 846, prescribing controlled substances that resulted in death or serious bodily injury in violation of 21 U.S.C. § 841(b)(1)(E)(i), or prescribing controlled substances that resulted in death or serious bodily injury in violation of 21 U.S.C. § 841(b)(1)(C). Similar to Count One, Dr. Couch insists that these Counts do not explain how his actions were "outside the usual course of professional medical practice and not for a legitimate medical purpose" and, therefore, illegal. (Doc. 379, p. 11).

Having reviewed the Indictment, the Court finds the Indictment does sufficiently allege that Dr. Couch conspired to take part in an enterprise whose purpose was to carry out racketeering activity. Further, the Indictment does sufficiently allege that Dr. Couch distributed or conspired to distribute controlled substances in an illegal manner. The allegations therein put Dr. Couch on notice that the Government intends to prove his actions were in violation of the law. The Government is not required to set forth all of the evidence in support of the allegations or to explain its theory of the case in the Indictment. The Indictment must only set forth the essential elements of the offense, notify Dr. Couch of the charges to be defended against, and enable Dr. Couch to rely upon a judgment as a bar against double jeopardy. The Indictment satisfies this standard.

Dr. Couch's argument also appears to insist that the Government cannot obtain a conviction based on the facts alleged in the Indictment. In his words, there are no "allegations [ ] [to] support the statutory language tha[t] Dr. Couch" violated the law. (Doc. 407, p. 4). This argument is premature. The Court cannot dismiss

certain counts of the Indictment based on the alleged insufficiency of the evidence presented in support of the charges against Dr. Couch. *See United States v. Critzer*, 951 F.2d 306, 307–08 (11th Cir. 1992) (explaining that the Rules do not provide for pre-trial determinations regarding the sufficiency of the evidence or summary judgment); *see also United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (explaining that even if the facts could prove that defendant may not be guilty, that does not facially invalidate the indictment's allegations); *see also United States v. Hawkins*, 765 F.2d 1482, 1488 (11th Cir. 1985) ("An indictment valid on its face cannot be challenged merely because the grand jury acted on inadequate or incompetent evidence."); *see also United States v. Salman*, 378 F.3d 1266, 1267–68 (11th Cir. 2004) (reversing the district court because it looked beyond the face of the indictment and ruled on the merits of the charges, which was, in effect, the granting of summary judgment for the defendant). The "proper avenue" for Dr. Couch to contest the sufficiency of the evidence against him is a motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure. *Salman*, 378 F.3d at 1268.

Moreover, as the Government correctly counters, the Indictment need not explain how Dr. Couch's actions were outside the scope of his professional practice to be valid. (Doc. 387, p. 3). In *United States v. Steele*, the Eleventh Circuit explained:

> It is not the courts but Congress that defines crimes and defenses in the United States Code. Subject only to constitutional constraints, it has the authority to specify whether a given factor must be pleaded by the government in the indictment as an element of an offense, or affirmatively raised by defense as part of its case. Steele contends Congress overstepped its bounds with § 885(a)(1), because the course of

13

> professional practice factor is an element of the § 841(a)(1) offense, and all elements must be alleged in the indictment. An essential premise of that syllogism is that the course of professional practice factor is an element, not a defense, but that is not what Congress said when it definitively exercised its right to say. Instead, Congress said that the course of professional practice exception, indeed all exceptions to the prohibition against manufacturing, distributing, dispensing, and processing controlled substances, are defenses not elements, and that their inapplicability need not be alleged in the indictment.

147 F.3d 1316, 1320 (11th Cir. 1998) (en banc).

This passage further illustrates that Dr. Couch's argument is misplaced. It would be improper to dismiss the contested counts within the Indictment because they do not explain how Dr. Couch's actions were outside the scope of his professional practice. For these reasons, Dr. Couch's Motion to Dismiss Certain Counts Within the Indictment is **DENIED**.

### b. Bill of Particulars

The majority of Dr. Couch's bill of particulars motion is best summed up as follows: "Primarily, Dr. Couch asks for information relating to dates, prescriptions, and patients subject to the various counts." (Doc. 379, p. 16). Given the volume of patients and evidence in this case, it would be hard to formulate a meaningful defense in its absence. "A bill of particulars will better serve justice by giving Dr. Couch notice of the patients, practices, and events the government intends to raise at trial." (Doc. 379, p. 15). These arguments addressing the necessity of identifying the patients and practices in question are sprinkled throughout the motion.

The Court understands the sea of potential patients the Government had to

build its case with was initially vast, but Dr. Couch has not been left rudderless to navigate these waters. To this end, the Government explains that it provided expert reports, witness statements, and employee information for what will be offered at trial. (Doc. 387, p. 6). The Government's provision of this information drastically reduced the sea of patients. Dr. Couch's practices that relate to these patients are surely within his knowledge since he is the treating physician. Therefore, Dr. Couch received by other means the information he now requests through a bill of particulars. He does not dispute this point. Thus, the Government's lists allow him to prepare his defense and avoid surprise. To require the Government to go further and explain how each patient or practice works into the collage of its case steps beyond what is required. *Burgin*, 621 F.2d at 1359.

But it goes without saying that what will be presented at trial is not set in stone at this point. And the Court's decision should not be interpreted as requiring the Government to concede that no other patients will be discussed, as Dr. Couch suggests. *See* (Doc. 407, p. 5). A trial does not play out like actors neatly following a set script but evolves with each witness and piece of evidence. Unforeseen events may occur requiring mid-trial adjustments. And such adjustments are best ruled on as they occur within the proper context of the trial.

Aside from identifying particular patients and practices, Dr. Couch raises arguments akin to those in his Motion to Dismiss Certain Counts, but none warrant a bill of particulars. To begin, Dr. Couch propounds that a bill of particulars is due because the Government "does not state what purposes the medications were

15

allegedly prescribed for, if not for legitimate medical purposes." *Id.* at 13. What if any medical purpose a prescription is for is not an element required within the Indictment; therefore, further specificity is unnecessary. *See Steele*, 147 F.3d at 1320. Next, Dr. Couch takes the Government to task for not defining terms within the Indictment like "large quantity" of prescriptions or "pill mill." (Doc. 379, p. 13). Dr. Couch's position that these terms are illusory is, to say the least, strained. The Government represented that it "spent multiple hours on two occasions" speaking with Dr. Couch's counsel and going through evidence and the theory of its case. (Doc. 387, p. 6). To now, less than two weeks before trial, contend that he does not understand or cannot legitimately prepare a defense without additional explanation of these terms stretches reason.

Lastly, Dr. Couch avers that the conspiracy counts do not reveal how he and others conspired to distribute the controlled substances or which patients were the objects of the conspiracies. (Doc. 379, p. 15). This argument also misses its mark. "A bill of particulars may not be used to compel the government to provide the essential facts regarding the existence and formation of a conspiracy. Nor is the government required to provide defendants with all overt acts that might be proven at trial." *Rosenthal*, 793 F.2d at 1227 (citing *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978)). Therefore, Dr. Couch's Motion for Bill of Particulars is **DENIED**.

## IV. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss the Second

16

Superseding Indictment, in Part (Doc. 374; Doc. 378) and Dr. Couch's Motion to Dismiss Certain Counts of the Second Superseding Indictment or, in the Alternative, Motion for Bill of Particulars (Doc. 379) are **DENIED**.

**DONE and ORDERED** this 23rd day of December, 2016.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE