# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **v.** | } | **Case No.: 1:15-CR-88-CG** |
| | } | |
| **JOHN PATRICK COUCH, M.D., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

### DEFENDANT JOHN PATRICK COUCH, M.D.'S
### TRIAL BRIEF CONCERNING DEFENSE

Defendant John Patrick Couch, M.D. respectfully submits this trial brief on the nature and scope of evidence that may be offered relevant to his defense.

The Fifth and Sixth Amendments to the United States Constitution guarantee Dr. Couch the right to present evidence, including witnesses, in his defense, and to have "compulsory process for obtaining witnesses in his favor." *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004) (quoting *U.S. Const.* amend. VI). The Eleventh Circuit has identified four circumstances in which the Court is bound by the Due Process guarantee of the Fifth Amendment and the Compulsory Process guarantee of the Sixth Amendment to permit a criminal defendant to introduce evidence.

1. "First, a defendant must generally be permitted to introduce evidence directly pertaining to any of the actual elements of the charged offense or an affirmative defense." *Id.* at 1363.

2. "Second, a defendant must generally be permitted to introduce evidence pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more elements of the charged offense or an affirmative defense more or less certain." *Id.*

3. "Third, a defendant generally has the right to introduce evidence that is not itself tied to any of the elements of a crime or affirmative defense, but that could have a substantial impact on the credibility of an important government witness." *Id.*

4. "Finally, a defendant must generally be permitted to introduce evidence that, while not directly or indirectly relevant to any of the elements of the charged events, nevertheless tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently." *Id.*

Dr. Couch intends to introduce evidence, including witnesses, that falls within one or more of these four characterizations.

### **Former Patients**

First, Dr. Couch may seek to call as witnesses former patients who were prescribed substantial volumes of the transmucosal immediate release fentanyl (TIRF) medicines—specifically Subsys and Abstral—that are at the center of the Government's case. These witnesses all meet the first *Hurn* characterization, that is, their testimony "has a direct bearing on a formal element of the charged offense." *Id.*

Count Three of the Second Superseding Indictment charges Dr. Couch with having "conspired . . . to knowingly and unlawfully distribute and dispense . . . fentanyl . . . outside the usual course of professional medical practice and not for a legitimate medical purpose." Second Superseding Indictment, ¶ 81. The Government has put on evidence related to the prescribing by Dr. Couch of Subsys and Abstral to patients without cancer in order to show that Dr. Couch's treatment was outside the usual course of medical practice. Government witnesses have testified concerning the Federal Drug Administration's (FDA) approval of TIRF medicines "for the management of breakthrough pain in patients with cancer who are already receiving, and who

2

are tolerant to, around-the-clock opioid therapy for their persistent pain." *Id.* ¶ 31.  The

Government's witnesses—including its expert witnesses—have admitted that the prescribing of

medicines "off-label" is not itself unlawful or inappropriate, so long as those prescriptions were

issued for a legitimate medical purpose and within the usual course of professional medical

practice.

The Government has placed in evidence (1) all prescriptions written by Dr. Couch, and

(2) estimates regarding how many of those prescriptions were illegitimate.  Additionally, with

the charts it has introduced related to TIRF medicines, the Government has suggested that all

TIRF prescriptions were illegitimate, as they were purportedly motivated by profit rather than

medical justification.  In addition to the various compilations of data taken from the entire field

of Dr. Couch's patients, *see, e.g.,* Government Exhibits 10-1 through 10-20, the Government has

introduced and the Court has admitted the medical charts of specific patients whom the

Government claims were prescribed high volumes of Subsys and/or Abstral.  *See, e.g.,*

Government Exhibits 12-1 (a) – (j).  In addition, the Government called as witnesses patient

Randall Blackmon and his wife Rita Blackmon, patient Tamison Blanks, patient Joyce Barber,

and patient Tena Goellner and her daughter Kayla DeSalvo in support of the allegation that Dr.

Couch conspired to prescribe Subsys and Abstral for an illegitimate purpose or outside the usual

course of medical practice.

Dr. Couch will offer similar evidence, including patients, just as the Government has

done, but in order to rebut the Government's fentanyl claims.  The evidence Dr. Couch will offer

will tend to show that the non-cancer patients who were treated with relatively high doses of

TIRF medicines suffered from diagnosed medical conditions that were severe and that resulted in

intense pain.  It will tend to show that those patients had a patient-doctor relationship with Dr.

Couch, that they had a tolerance to opioid analgesics, that they understood the medical purposes of the prescriptions, that the medicine prescribed was effective at relieving their pain, and that the side-effects of the medicine were similar to those of other medicines. That evidence will therefore tend to demonstrate that such prescriptions, contrary to the Government's allegations, were not outside the usual course of medical practice, and that the prescriptions of those substances by Dr. Couch were lawful.

Dr. Couch's TIRF patient evidence also satisfies the second *Hurn* factor. Even if not directly relevant to an element of the offense, it "makes the existence or non-existence of [a] collateral matter somewhat more or less likely, where that collateral matter bears a sufficiently close relationship to an element of the offense." *Hurn*, 368 F.3d at 1364.

In *United States v. Sheffield*, 992 F.2d 1164 (11th Cir. 1993), the defendant was convicted of conspiracy to embezzle United States Air Force property by ordering his subordinates to use government resources to manufacture fishing lures for his personal use. *Id.* at 1165. The trial judge excluded as irrelevant all evidence pertaining to the custom of using base facilities to produce authorized retirement gifts for high-ranking employees. *Id.* at 1169. The trial judge reasoned that "the base practice of making authorized retirement gifts had no bearing on whether Mr. Sheffield ordered fishing lures made for his own benefit." *Id.* at 1170.

The Eleventh Circuit found the exclusion of that evidence erroneous because "[e]vidence of the gift-making custom was relevant to Mr. Sheffield's state of mind when he ordered the production of fishing lure molds." *Id.* Specifically, it showed

> that making fishing lure molds could be a legitimate project at the base, if they were for an authorized retirement gift. Without this evidence of the gift making custom, production of fishing lure molds on a U.S. Air Force Base must have seemed to the jury like the oddball project of a renegade fisherman.
>
> In sum, this evidence was relevant because it had a tendency to make more probable Mr. Sheffield's claim that his request for fishing lure molds was part of a

4

legitimate base project.  *See* Fed. R. Evid. 401.  Evidence of the gift making custom was probative of the material question of Mr. Sheffield's intent, his state of mind, when he ordered production of the molds.

*Id.*

Here, as in *Sheffield*, Dr. Couch seeks to introduce evidence of legitimate conduct that is categorically identical to conduct the Government claims is illegitimate—the prescribing of TIRF medicines to non-cancer patients.  As in *Sheffield,* that evidence is relevant to the *mens rea* element of the conspiracy offense.  It has a tendency to make more probable Dr. Couch's claim that his prescriptions of TIRF medications to non-cancer patients were part of a legitimate practice of pain medicine.  As in *Sheffield*, the exclusion of this evidence would violate Dr. Couch's rights under the Fifth and Sixth Amendments.

Finally, Dr. Couch's TIRF patient evidence satisfies the fourth *Hurn* factor.  When the Government's evidence, "in itself, tends to make the defendant's acts appear unusual or suspicious, when in fact they are part of a normal, even accepted, routine[,]" the defendant has the right to "complete the picture."  *Hurn*, 368 F.3d at 1367.

In *Sheffield*, the Eleventh Circuit found that "by showing that this kind of project was not unheard of at the base, this retirement gift evidence certainly put a different light on Mr. Sheffield's actions.  The evidence should have been admitted to put the charges against Mr. Sheffield in context, 'to complete the story of the crime on trial.'"  *Sheffield*, 992 F.2d at 1170 (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)).

Here, Government has introduced all of Dr. Couch's prescriptions, and compilations of data from the entire field of Dr. Couch's patients.  The Court has admitted over Dr. Couch's objections Government evidence in the form of a "Top 25" list of patients receiving Abstral and Subsys by grams prescribed, *see* Government Exhibit 10-25, and has also introduced the medical

5

charts of those patients on the list who did not have cancer diagnoses, *see* Government Exhibits 12-1 (a) – (j).  This evidence has the effect of "mak[ing] the defendant's acts appear unusual or suspicious," and Dr. Couch has the right to "complete the picture."

The Government also presented evidence that tends to show that prescriptions for opioid analgesics, benzodiazepines and muscle relaxants (the Government's witnesses refer to this as the "holy trinity") to the same patients were outside the usual course of medical practice.  *See, e.g.,* Government's Exhibits 1-12, 10-16.  In addition to evidence related to the so-called "holy trinity," the Government has presented evidence through Agent Susannah Herkert and Gary Douthitt, for example, of the high-street value and relative street desirability of certain medicines prescribed by Dr. Couch (Roxicodone 30mg and  Opana, for example).  Taken together, these two categories of the Government's evidence are offered to support the Government's conspiracy charges against Dr. Couch.

Dr. Couch will introduce evidence that tends to show that the prescriptions of the so-called "holy trinity" combinations of medicines, and the prescriptions for other medicines that may have had some street-value, were nonetheless for a legitimate medical purpose and not outside the usual course of medical practice.  *See Hurn*, 368 F.3d at 1364 ("A defendant also has the right to introduce evidence that is not directly relevant to an element of the offense, but that makes the existence or non-existence of some collateral matter somewhat more or less likely, where that collateral matter bears a sufficiently close relationship to an element of the offense."). Dr. Couch will call patients who were prescribed these medicines or combinations of medicines to contradict the inference invited by the Government's evidence that these prescriptions further demonstrate the *mens rea* element of the conspiracy charges.  *See id.* at 1364 (citing *United States v. Sheffield*, 992 F.2d 1164 (11th Cir. 1993)).

6

**<u>Former Employees and Associates of PPSA</u>**

Additionally, Dr. Couch will introduce evidence through various former employees and former business associates of PPSA.  These witnesses include medical practitioners and their managers, medical billers, and witnesses involved in managing and keeping the business of PPSA.  In addition to testifying regarding their specific areas of responsibility as described below, these witnesses will offer testimony that contradicts the testimony of various Government witnesses on key issues.  For example, the Government has put on evidence concerning the impaired appearance of PPSA mid-level practitioners, the condition of large percentages of PPSA patients as "over-medicated" or looking like "zombies," characterizations of percentages of PPSA patients being prescribed high doses of narcotics, percentages of PPSA patients who had cancer diagnoses, and other testimony that tends to cast Dr. Couch's practice in an unfavorable light but also as part and parcel of a racketeering pattern.  *See* Second Superseding Indictment, ¶¶ 54-76 .  The Government has also put on evidence of general "practice," including the nature of medical records, the widely-known nature of employees' drug habits, the "quadruple-booking" of patient appointments, and the condition of the waiting room.  The witnesses Dr. Couch seeks to call will tend to "complete the picture" for the jury, and "dispel [the] unjustified taint" created by the Government's evidence, *see, e.g., id.* at 1366-67, and to demonstrate to the jury that there is, in fact, no pattern.

Furthermore, each of these witnesses will present evidence that is directly relevant to the elements of the charges, or relevant through chains of inferences that have already been created in the course of the Government's case in chief.

Dr. Couch will further and more specifically proffer his evidence to the Court as required.

Respectfully Submitted,

Dated: February 7, 2017

*Jackson R. Sharman III*
One of the Attorneys for Dr. Couch

OF COUNSEL:
Jackson R. Sharman III
jsharman@lightfootlaw.com
Brandon K. Essig
bessig@lightfootlaw.com
Jeffrey P. Doss
jdoss@lightfootlaw.com
Benjamin S. Willson
bwillson@lightfootlaw.com
Robert J. Sewell
jsewell@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE LLC
400 20th Street North
Birmingham, Alabama 35203
(205) 581-0700

Arthur T. Powell
*atp@law-linc.com*
P.O. Box 40456
Mobile, Alabama 36640
(251) 433-8310

## CERTIFICATE OF SERVICE

I certify that, on this 7th day of February, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jackson R. Sharman III*
OF COUNSEL

8