IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| v. | ) CRIMINAL NO. 15-0088-CG-B<br>)<br>) |
| JOHN PATRICK COUCH, M.D.,<br>XIULU RUAN, M.D., | )<br>)<br>) |

## ORDER

This action is before the Court on the motion of Defendant Xiulu Ruan for Judgment of Acquittal or, in the Alternative for New Trial (Doc. 528), the motion of Defendant John Patrick Couch for Judgment of Acquittal or, in the Alternative, for New Trial (Doc. 530), and the Government's response to both motions (Doc. 568). For the reasons explained below, the Court finds that Defendants' motions should be denied.

**I. Motion for Acquittal**

Defendants moved for judgment of acquittal Pursuant to Rule 29(c), requesting that the Court set aside the guilty verdicts entered against them. A defendant is entitled to a judgment of acquittal when "the evidence is insufficient to sustain a conviction." *See* FED. R. CRIM. P. 29(a) (discussing standard for acquittal before submission to the jury).

> In considering a motion for the entry of judgment of acquittal under Federal Rule of Criminal Procedure 29(c), a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction. *See United States v. Sellers*, 871 F.2d 1019, 1020

1

(11th Cir.1989). The district court must view the evidence in the light most favorable to the government. *See id.* (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), superceded by rule on other grounds, *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). The court must resolve any conflicts in the evidence in favor of the government, *see United States v. Taylor*, 972 F.2d 1247, 1250 (11th Cir.1992), and must accept all reasonable inferences that tend to support the government's case. *See United States v. Burns*, 597 F.2d 939, 941 (5th Cir.1979). The court must ascertain whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *See Sellers*, 871 F.2d at 1021 (citing *United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir.1987)). " 'It is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.' " *Sellers*, 871 F.2d at 1021 (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc ), aff'd on other grounds, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)). A jury is free to choose among reasonable constructions of the evidence. *See Sellers*, 871 F.2d at 1021. The court must accept all of the jury's "reasonable inferences and credibility determinations." *See id.* (citing *United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir.1984)).

*United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999) (footnote omitted).

In the instant case, both Defendants renew their motions for judgment of acquittal filed at the close of the Government's case-in-chief and incorporate those grounds as well as those stated on the record at trial. Defendants do not offer any additional arguments to support their motions for judgments of acquittal. The Court, after reviewing Defendants' prior motions (Docs. 463 & 465) and considering the arguments made on the record, again finds that a reasonable jury could have found the Defendants guilty beyond a reasonable doubt. Accordingly, Defendant's motions for judgment of acquittal will be denied.

## II. New Trial

Defendants move in the alternative for a new trial pursuant to Rule 33. Rule 33 of the Federal Rules of Criminal Procedure empowers a district court to vacate a judgment and grant a new trial if the interest of justice requires. FED. R. CRIM. P. 33(a). "[T]here are two grounds upon which a court may grant a motion for new trial: one based on newly discovered evidence … ; and the other based on any other reason, typically the interest of justice …" *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006). The decision whether to grant or deny such a motion rests in the sound discretion of the trial court. *United States v. Champion*, 813 F .2d 1154, 1170 (11th Cir.1987). Under Rule 33, the Court "may weigh the evidence and consider the credibility of witnesses." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). "In evaluating a motion for a new trial, [a] district court need not view the evidence in the light most favorable to the verdict." *United States v. Ward*, 274 F.3d 1320, 1323 (11th Cir. 2001) (citations and internal quotations omitted). However, "[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Martinez*, 763 F.2d at 1312–13. Motions for new trials should be granted "sparingly," and only granted in "those really 'exceptional cases.'" *Id.* at 1313.

In the instant case, Defendants contend that a new trial is warranted for the following reasons: 1) insufficient evidence, 2) erroneous jury instructions, 3)

erroneous evidentiary rulings, and 4) improper comments made during closing arguments.

### A. Sufficiency of Evidence

Defendants argue that a new trial is warranted because the evidence sufficiently preponderates against the convictions for the same reasons outlined in their motions for acquittal. In particular, in relation to Counts Eight, Nine, Eleven and Twelve, Defendant Ruan points to the credibility and competency of the Government's expert witness, Dr. David Greenberg.  Greenberg's competency was not raised prior to trial and when the issue was raised after Greenberg testified (Sealed Doc. 448), the Court found on the record that he was competent to testify. (TR 1-17-2017).  Defendant Ruan contends Greenberg's testimony was incredible, but the Court disagrees. During his testimony Greenberg sometimes seemed confused about details and appeared to have trouble locating specified pages in reports and exhibits when questioned by the attorneys, but his analysis and conclusions appeared to be sound. The jury was free to consider Greenberg's apparent confusion in determining whether the evidence established guilt beyond a reasonable doubt and the Court presumes that the jurors were capable of evaluating the credibility of the witness's testimony.

Defendant Ruan also questions the sufficiency of evidence regarding particular elements of the charges in Count Four – for conspiracy to distribute Schedule III Controlled Substances and the charges in Count Sixteen - for conspiracy to violate anti-kickback statutes.  However, the Court finds there was

4

sufficient evidence to support both of these charges.

As to Count Four, Defendant argues that the Government failed to submit that any prescriptions for Schedule III Controlled Substances were distributed outside the usual course of his professional practice and for no legitimate medical purpose in violation of 21 U.S.C. §§ 841(a)(1) and 846. However, the Court disagrees. There was significant evidence at trial that prescriptions were distributed outside the usual course of professional practice and for no legitimate medical purpose. Moreover, Count Four does not charge a substantive violation, but instead alleges that Defendants conspired to distribute and dispense Schedule III Controlled Substances outside the usual course of professional medical practice and not for a legitimate medical purpose. Thus, under Count Four, the evidence must only show that each Defendant agreed with others to try to accomplish the unlawful act.

As to Count Sixteen, Defendant contends that there was no evidence: 1) that a Federal health care program was involved, 2) of any payment by a Federal health care program for the Controlled Substance, or 3) that a referral was involved. However, the Court finds there was sufficient evidence for a reasonable jury to find that all of the required elements were met. There was sufficient evidence that the Defendants received remuneration in exchange for referring an individual for the furnishing or arranging for the furnishing of an item or service that was covered by a federal health care program. The Court is not persuaded that there was insufficient evidence to establish Defendants' guilt beyond a reasonable doubt on

5

any of the charges for which the jury returned a guilty verdict.

**B. Jury Instructions**

Defendant Couch[1] contends that a new trial should be granted because this Court's instructions concerning the Controlled Substances Act were erroneous. The Eleventh Circuit has stated that "[g]enerally district courts 'have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts,' and we will not reverse a conviction on the basis of a jury charge unless 'the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial was as to violate due process.' " *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000) (quoting *United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993)). "The court should order a new trial where [its jury] instructions do not accurately reflect the law, and the instructions as a whole do not correctly instruct the jury so that [the court is] left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *United States v. AseraCare Inc.*, 153 F. Supp. 3d 1372, 1384 (N.D. Ala. 2015) (quoting *Broaddus v. Fla. Power Corp.*, 145 F.3d 1283, 1288 (11th Cir.1998) (internal quotations omitted)). This Court has previously described the legal standard for a new trial based on erroneous jury instructions as follows:

> "A district court has broad discretion in formulating jury instructions." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1313 (11th Cir.2000) (citing *Christopher v. Cutter Laboratories*, 53 F.3d 1184, 1190 (11th

---

[1] Defendant Ruan moved to adopt Defendant Couch's motion for judgment of acquittal, or in the alternative for a new trial and this Court granted Ruan's motion to adopt. (Docs. 531, 533). Accordingly, any arguments made by Couch are also considered to have been asserted by Ruan.

6

Cir.1995)). Indeed, the law is clear that the trial judge "is not bound to parrot either counsel or appellate courts," that "his wide discretion permits him to select his own words and to charge in his own style," and that he is required only to "communicate[ ] the substance of the law correctly." *Bass v. International Broth. of Boilermakers*, 630 F.2d 1058, 1061 (5th Cir.1980); *see also Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir.1999) ("we accord the trial judge wide discretion as to the style and wording employed in jury instructions and verdict forms") (citation omitted). Not surprisingly, then, "[m]otions for new trial on the basis of erroneous and prejudicial jury instructions are committed to the discretion of the trial court and reviewed to ascertain whether there has been a clear abuse of that discretion." *Toole*, 235 F.3d at 1313 (citing *Christopher*, 53 F.3d at 1190)). A new trial should be granted if the jury instructions "did not accurately reflect the law in such a way that we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1196 (11th Cir.2004) (citation omitted) (affirming denial of motion for new trial where appeals court was not left with substantial and ineradicable doubt that the jury was misled by the instruction given). "[T]he trial court's refusal to give a requested instruction is not error where the substance of that proposed instruction was covered by another instruction which was given." *Merchants Nat. Bank of Mobile v. United States*, 878 F.2d 1382, 1388 (11th Cir.1989). Even if a refused instruction (a) is not adequately covered by the existing charge, (b) is a correct statement of law, and (c) deals with an issue that is properly before the jury, "there still must be a showing of prejudicial harm as a result of the instruction not being given before the judgment will be disturbed." *Merchants*, 878 F.2d at 1389; *see also Bass,* 630 F.2d at 1062 ("Only if the trial judge's instructions to the jury, taken as a whole, give a misleading impression or inadequate understanding of the law and the issues to be resolved, is a new trial required."); *Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir.2004) (to win a new trial based on erroneous jury instruction, movant "must show both that the instructions did not adequately state the law and that the error was prejudicial to them because the jury was likely to be confused or misled"); *Johnson v. Clark*, 484 F.Supp.2d 1242, 1252 (M.D.Fla.2007) (new trial is warranted for erroneous jury instruction only if challenged instruction was incorrect statement of law and was probably responsible for an incorrect verdict leading to substantial injustice). Where an error in the jury instructions did not influence the verdict, it is harmless and does not warrant a new trial. *See Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 758 (2nd Cir.2004).

*Phillips v. Irvin,* 2007 WL 2570756, at *9 (S.D. Ala. Aug. 30, 2007).

In his motion, Defendant points to the following instruction that was given at trial:

> A controlled substance is prescribed by a physician in the usual course of professional practice and, therefore, lawfully, if the substance is prescribed by him in good faith as part of his medical treatment of a patient in accordance with the standard of medical practice generally recognized and accepted in the United States. The defendants in this case maintain at all times they acted in good faith and in accordance with standard of medical practice generally recognized and accepted in the United States in treating patients.

Defendant argues that the Court's instruction failed to caution the jury regarding civil standards of liability. According to Defendant, the jury should have received an instruction that malpractice, on its own, was insufficient to support a conviction. Defendant further argues that the jury should have been instructed that a violation required more than a deviation from the standards of care and must amount to a deviation from medical practice altogether. Defendant contends that because there was expert testimony that substantiated his defense that "outside the usual course" requires that a physician cease practicing medicine, rather than merely practice medicine in a negligent manner, the Court should have given Defendant's proposed instruction on that issue. However, the Court addressed Defendants' arguments at the charge conference on February 16, 2017 and the Court is not persuaded that the instructions given were erroneous. The above quoted instruction is an accurate statement of the law and it makes clear that a doctor acting in good faith in accordance with the standard of medical practice generally recognized and accepted in the United States is acting within the usual course of professional practice.

Defendant's proposed instruction included similar language.[2] The jury heard expert and lay testimony regarding the Defendants' actions in the treatment of patients and whether those actions were within the usual course of professional practice. The experts that testified at trial disagreed on the limits of acting within the usual course of professional practice and the jury was instructed that "[e]xperts can reasonably disagree with each other regarding whether a prescription was written within or outside the usual course of professional practice." The jury was also instructed that to be found guilty they must find beyond a reasonable doubt that "the Defendant did not have a legitimate medical purpose" to prescribe the Controlled Substances, or did not prescribe the Controlled Substances "in the usual course of professional practice." The Court finds the instructions sufficiently covered the issues and that Defendant's lengthy proposed instruction might have confused the jury.

Defendant also objects to the Court's use of the following instruction:

However, expert medical testimony is not essential to your consideration of this case, because a jury may find that a doctor violated the Controlled Substances Act from evidence received from lay witnesses surrounding the facts and circumstances of the

---

[2] Defendant's proposed instruction included:
"If a physician dispenses or distributes a Controlled Substance in good faith while medically treating a patient, then the physician has dispensed or distributed that Controlled Substance for a legitimate medical purpose and within the usual course of professional practice, and you must return a not guilty verdict for the applicable count. Good faith … means that the Defendant acted in accordance with what he reasonably believed to be proper medical practice. … The Government must prove, beyond a reasonable doubt, that the decision to dispense or distribute a Controlled Substance fell below a standard of medical practice generally recognized and accepted in the United States before you can return a guilty verdict as to that alleged violation of the Controlled Substances Act."

9

prescriptions."

Defendants assert that the instruction permitted the jury to convict based on an undefined standard. However, this instruction is a correct statement of the law, as Defendants conceded during the charge conference. (TR 2-16-2017, "I understand this is a correct statement of the law and I'm aware of that case law. But …). After agreeing that it was correct, Defense counsel still objected to the charge. The Court discussed the charge with counsel and stated that she thought it best to leave it in, but offered that if defense counsel thought it was a wrong statement of the law, she would "certainly reconsider." Defense counsel again admitted that it was not a wrong statement of the law and the instruction remained in the jury charges. Defendants have not persuaded the Court that the instructions given did not accurately reflect the law, or that the instructions as a whole did not correctly instruct the jury and properly guide the jury in its deliberations.

Additionally, the Court finds that at least one of the statements included in Defendant's proposed jury instruction was not an accurate statement of the law. The proposed jury instruction stated that "[t]o prove a violation of the Controlled Substances Act in this case, the Government must prove … that the physician, in fact, operated as a drug pusher." The Government was not required to prove that the Defendant acted as a drug pusher or drug dealer. *See United States v. Robinson*, 2017 WL 2080248, at *2 (D.D.C. May 15, 2017) (finding that § 841 violations do not require allegations that a physician acted as a drug dealer or drug pusher).

10

**C. Evidentiary Rulings**

To successfully challenge a verdict on the basis of a district court's incorrect evidentiary ruling, a party must 1) "demonstrate either that his claim was adequately preserved or that the ruling constituted plain error"; 2) "establish that the district court abused its discretion in interpreting or applying an evidentiary rule"; and 3) "establish that this error affected ... a substantial right." *United States v. Stephens*, 365 F.3d 967, 974 (11th Cir. 2004) (citations and internal quotations omitted). "[C]riminal defendants must be afforded the opportunity to present evidence in their favor." *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004). When a criminal defendant claims a violation of his Fifth and Sixth Amendment right to call witnesses in his defense, we assess these claims under a two-step analysis. *Id.* First, we examine whether the defendant's constitutional rights have actually been violated, and then ask whether the error was "harmless beyond a reasonable doubt." *Id.* at 1362–63 (quotation omitted). The inquiry under the harmless error doctrine is whether there was a "reasonable possibility" that the excluded evidence contributed to the guilty verdict. *United States v. Cruz*, 765 F.2d 1020, 1025 (11th Cir. 1985). A district court's exclusion of a defendant's evidence violates their constitutional rights to Compulsory Process and Due Process in four circumstances.

> First, a defendant must generally be permitted to introduce evidence directly pertaining to any of the actual elements of the charged offense or an affirmative defense. Second, a defendant must generally be permitted to introduce evidence pertaining to collateral matters that,

> through a reasonable chain of inferences, could make the existence of one or more of the elements of the charged offense or an affirmative defense more or less certain. Third, a defendant generally has the right to introduce evidence that is not itself tied to any of the elements of a crime or affirmative defense, but that could have a substantial impact on the credibility of an important government witness. Finally, a defendant must generally be permitted to introduce evidence that, while not directly or indirectly relevant to any of the elements of the charged events, nevertheless tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently.

*Hurn*, 368 F.3d at 1363 (internal footnotes omitted). Defendant Couch contends that evidence was erroneously admitted or excluded regarding: 1) PDMP Data, 2) "other patient" evidence, 3) Ken Cross's termination, 4) Dr. Tricia Aultman's qualifications, and 5) facts surrounding the undercover agent's visit to PPSA.

**1) PDMP Data**

Defendant cites to his objections at trial to the PDMP data as unreliable hearsay and his claim that its admission violated the Defendant's right to confront and examine the underlying declarants. Defendant claims that the admission of the PDMP data was not harmless because the Government used the evidence to corroborate the CSA-based allegations by offering them as support for the alleged volume of prescriptions. The Court considered Defendants' arguments at trial regarding the PDMP's unreliability. The fact that its reliability depended on the input of the data by the drug providers, such as pharmacists, was made clear to the Court and the jury. However, Defendants themselves testified that they relied on the PDMP data regularly in their practice. Experts on both sides testified that physicians should check the PDMP for patients and use the data regularly in their medical practice. The Court is not persuaded that it erred by allowing the PDMP

12

evidence.

**2) "Other Patient" Evidence**

Defendant objects to this Court's exclusion of evidence relating to the treatment of patients who were not mentioned in the indictment. The Government did not maintain that all of Defendants' patients were treated outside the usual course of professional practice. The indictment named specific patients that were allegedly treated outside the usual course of professional practice. Defendants arguments were addressed prior to and during trial and Defendants have offered no new case law or arguments. The evidence clearly does not directly pertain to any of the actual elements of the charged offenses. The evidence also does not make the existence of one or more of the elements of the charged offenses more or less certain and does not substantially impact the credibility of an important government witness. The Court also finds that the evidence does not place the story presented by the prosecution in a significantly different light. The fact that Defendants treated other patients within the usual course of professional practice and for legitimate medical purposes does not excuse or lessen the criminal nature of their alleged wrongful conduct. The Court is not persuaded that its rulings on the admission of evidence pertaining to "other patients" were in error or that there is a reasonable possibility that the excluded evidence contributed to the guilty verdict.

**3) Ken Cross's Termination**

Defendant disagrees with the Court's ruling that the Defense could not illicit testimony regarding the reasons Ken Cross's employment was terminated by

Defendants. Defendant reports that Boe Strange would have testified that Cross was terminated due to incompetence. Cross testified that he did not know why he was terminated. He was terminated after he warned the Defendants about certain insurance-related and regulatory requirements. Specifically Cross testified that he warned Defendants that there was a pain doctor who was busted in Florida and that they need to make sure they are doing everything correctly. Cross also testified that he became aware there were blank prescriptions signed by Couch and he warned Couch that he should not be doing that. Additionally, Cross testified that he advised the Defendants to see their patients at every visit at least for a moment because Blue Cross Blue Shield does not recognize "incident-to" billing. Cross also testified that he told the Defendants that they cannot increase their prescriptions because they bought stock in a particular drug company and he advised that they could not increase their ordering practices for MRIs because they purchased an MRI machine. (TR 1-27-2017).

Defendants did not cross-examine Cross about why he was terminated, but later attempted to illicit testimony from another witness, Boe Strange, about why Cross was fired. Defendant's counsel reported that Mr. Strange would testify that Cross did not do a very good job, he was disorganized and had not done certain tasks that he was asked to perform. The Government objected to the testimony on the basis of relevancy and because of potential hearsay. Defendants argued that Mr. Strange's testimony would show Cross's bias. (TR 2-13-2017). However, Cross had already testified to his potential bias – that he had been fired. No matter what the

reason, whether for mismanagement, because he had brought certain practice issues to light, or for some other reason, the fact that Cross was fired was the basis of any alleged bias. Indeed, Cross would have been less likely to be biased if he had been fired for a good reason, than he would be if he had been fired for no reason at all or for confronting Defendants about improprieties in their practice. The Court agrees that there was a reasonable possibility that Cross's testimony contributed to the guilty verdict. However, the Court does not find that there was a reasonable possibility that the excluded testimony regarding the reasons Cross was terminated could have contributed to the guilty verdict. The Court is not persuaded that the additional testimony could have had a significant impact on Mr. Cross's credibility. Defendant has not shown that the Court's rulings on the admission of evidence regarding why Mr. Cross was terminated was in error or that there is a reasonable possibility that the excluded evidence contributed to the guilty verdict.

### 4) Dr. Tricia Aultman's Qualifications

Defendant contends Dr. Aultman was not qualified to testify regarding the treatment of chronic pain patients. However, as discussed at trial, Defendants had been timely notified of Dr. Aultman's qualifications and her expected opinion testimony and neither Defendant filed a motion challenging her qualifications to testify as an expert. (TR 2-6-2017). Dr. Aultman is an internist and testified that she regularly uses and prescribes the opiates for patients that have chronic pain. She has also been qualified as an expert before in federal court. The Court finds she was qualified to testify as an expert.

Defendant also contends they should have been allowed to cross examine Dr. Aultman regarding her previous contracts with the DEA and her related compensation and regarding Mississippi's requirements for pain management physicians. However, the Court finds that how much Dr. Aultman was compensated for her work in other cases that are unrelated to this case is irrelevant. The Court also finds that the requirements for pain management physicians in Mississippi are irrelevant to the charges in this case. Therefore, the Court finds it did not err in sustaining the Government's objections to Defendants' counsel cross-examining Dr. Aultman on these matters.

**5) Facts Surrounding the Undercover Agent's Visit to PPSA**

Defendant asserts that that the Court erred in precluding Defendants from presenting evidence regarding the circumstances surrounding the undercover DEA Agent's admission to PPSA. Defendant wanted to introduce recordings of a PPSA employee with the chiropractor that referred the DEA Agent to PPSA as well as testimony from a PPSA employee regarding that conversation. Defendant wanted to show the aggressiveness of the chiropractor in getting the undercover DEA Agent accepted as a patient that did not have insurance. The jury heard testimony indicating that the undercover DEA Agent had initially been turned away and that it was only through the efforts of the referring chiropractor that PPSA ultimately agreed to accept him as a patient. The undercover DEA Agent himself testified that a lady at the reception desk at PPSA told him they did not take cash-paying patients, that he must have insurance to be treated at PPSA. (TR 1-19-2017 & 1-20-

2017). A PPSA employee, Debbie Phillips, also testified about a telephone conversation where the chiropractor that referred the Undercover DEA Agent spoke to another PPSA employee and upset her to the point of tears. Ms. Philips testified that PPSA did not allow patients that were cash only, they must have insurance or they would not be accepted as a new patient. (TR 2-9-2017). Thus, the evidence was not excluded completely; the Court merely precluded Defendants from going into it further and spending more time on the issue. The testimony was clear that PPSA did not regularly accept patients without insurance. The charges against the Defendants did not allege that they accepted cash-only patients and there was no suggestion or evidence during trial that Defendants accepted any cash-only patient other than the Undercover DEA Agent. The Court is not persuaded that it should have allowed additional evidence about the phone conversation with the referring chiropractor. The Court also finds that there is no reasonable possibility that the excluded evidence contributed to the guilty verdict.

The Court finds that the claimed evidentiary errors, even when considered cumulatively, did not have a prejudicial impact on the Defendant's ability to present a meaningful defense. Moreover, the Court does not find that any of the evidentiary rulings were in error. Thus, Defendants cannot support a cumulative error argument. *See United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011) ("Where there is no error or only a single error, there can be no cumulative error." (citation omitted)).

### D. Comments During Closing Arguments

Lastly, Defendant asserts that a new trial is warranted because the Government made improper comments during closing arguments. In the Eleventh Circuit, the following standard applies to whether comments during closing argument amount to prosecutorial misconduct:

> To find prosecutorial misconduct, a two-element test must be met: "(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *United States v. Gonzalez*, 122 F.3d 1383, 1389 (11th Cir.1997) (quoting *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir.1991)). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir.2006). We generally consider four factors: (1) whether the challenged comments had a tendency to mislead the jury or prejudice the defendant; (2) whether the comments were isolated or extensive; (3) whether the comments were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof establishing the guilt of the defendant. *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir.2009). A prosecutor's comments in closing statement must be viewed in the context of the trial as a whole. *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir.1997). The purpose of closing argument is to assist the jury in analyzing the evidence, and although a prosecutor may not exceed the evidence presented at trial during her closing argument, she may state conclusions drawn from the trial evidence. *Id.* Additionally, "the prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel." *United States v. Sarmiento*, 744 F.2d 755, 765 (11th Cir.1984) (quotation and alteration omitted). Thus, issues raised by a defendant in closing argument are "fair game for the prosecution on rebuttal." *Id.*

*United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014).

Defendant contends that the Government misstated the evidence during its rebuttal by claiming that Dr. Couch, and Dr. Ruan scored 1000, the highest score, on a pill mill analysis. (TR 2-16-2017). During trial Kevin McCash testified to the

18

scores Couch and Ruan received on a Medicare project algorithm that analyzes 17 factors related to a doctor's practice and scores doctors on a spectrum from zero to 1,000, the higher the score the more abnormal as compared to other doctors. (TR 1-26-2017). However, McCash was precluded from calling the analysis a "pill mill" analysis. On the morning before McCash testified, Defendants objected to his testimony asserting, among other things, that it was improper for the witness to testify that they had classified the analysis as a "pill mill" risk analysis. Defendant argued that the analysis was based on the doctors' prescribing volume rather than the elements the jury should use to decide the charges and that calling it a "pill mill" risk analysis is conclusory. The Court ruled that McCash, who was not testifying as an expert, could not testify that it was a "pill mill" risk analysis or conclude that the doctors' high scores meant that their practices are "pill mills." McCash was permitted to testify about the analysis that was run and the results without referencing "pill mills," which he did. (TR 1-26-2017).

The Government argues that the comment was inadvertent and did not have a bearing on the outcome of the case. The Court after reviewing counsel's statements during rebuttal agrees with the Government that even if calling it a "pill mill" analysis was improper, it did not prejudicially affect the substantial rights of the Defendants. The Government argued in opening and closing that Defendants' practice was a "pill mill" or "money mill" and that the evidence supported that label. While McCash as a lay witness could not opine that the analysis indicated that the practice was a pill mill, the Government was free to argue that the results

supported a conclusion that the practice was a pill mill. The Government was not precluded from using the term "pill mill." Courts have commonly used the term "pill mill" and found that it is not overly prejudicial and does not violate Rule 403. *See United States v. Guzman*, 571 F. App'x 356, 360–61 (6th Cir. 2014) (citing cases). Additionally, Defendants did not object to the Government's comment during rebuttal. If an objection had been asserted at that time, the Court could have given a curative instruction to the jury.

Moreover, the jury was not asked to determine whether the Defendants' practice was a pill mill. The jury was instructed as to the elements of each charge and none of the charges included a requirement that Defendants' practice was a pill mill. There was ample testimony during the seven-week trial from numerous patients, employees, and investigators that described the actions of the Defendants. There were also several experts who testified regarding the propriety of Defendants conduct. The Court finds that even if the comment was improper, the isolated comment did not affect the outcome of the case.

## CONCLUSION

For the reasons stated above, Defendants' motions for Judgment of Acquittal or, in the Alternative for New Trial (Docs. 528, 530), are **DENIED**.

**DONE** and **ORDERED** this 3rd day of August, 2017.

      /s/ Callie V. S. Granade
      SENIOR UNITED STATES DISTRICT JUDGE